MICHAEL S. BISSELL
CAMPBELL & BISSELL, PLLC
820 W. 7th Avenue
Spokane, WA  99204
Telephone:  (509) 455-7100
Email: mbissell@campbell-bissell.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| INITIATIVE MERCHANT SOLUTIONS, LLC, a California limited liability company, | ) ) ) ) | No. |
| Plaintiff, | ) ) | **COMPLAINT AND JURY DEMAND** |
| vs. | ) ) ) | |
| POSaBIT US, INC., f/k/a POSaBIT, INC., a Washington corporation, | ) ) ) | |
| Defendant. | ) | |

COMES NOW Plaintiff Initiative Merchant Solutions, LLC, by and through its attorney of record, Michael S. Bissell of Campbell & Bissell, PLLC, and for its complaint against POSaBIT US, Inc., f/k/a POSaBIT, Inc. alleges as follows:

/////

/////

/////

COMPLAINT AND JURY DEMAND - 1

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

# I.   **STATEMENT OF JURISDICTION**

1.     This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and this action is between citizens of different states.

2.     This Court has personal jurisdiction pursuant to the subject Agreement between the parties, which provides that any actions arising out of or based on the Agreement would be brought in federal or state court in Seattle, Washington, and that the parties submitted to the personal jurisdiction thereof.

# II.   **STATEMENT OF VENUE**

3.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(1), (c) and (d), because Defendant resides in the District and is subject to personal jurisdiction in the District.

# III.   **PARTIES**

4.     Plaintiff Initiative Merchant Solutions, LLC ("IMS") is a California limited liability company and its sole member, Christopher Altieri, is a resident and citizen of California.   IMS does not transact business in the State of Washington within the meaning of RCW 23B.15.010.

5.     Defendant POSaBIT US, Inc., f/k/a POSaBIT, Inc. ("POSaBIT") is a Washington corporation with its principal place of business in King County,

COMPLAINT AND JURY DEMAND - 2

**CB** | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

1   Washington and is, therefore, a citizen of Washington pursuant to 28 U.S.C. §

2   1332(c).

3                               IV.   <u>FACTS</u>

4       6.      IMS refers cannabis retailers and dispensaries (i.e., merchants) to

5   entities such as POSaBIT who assist the merchants in processing transactions.

6

7       7.      POSaBIT provides point of sale technology and services to cannabis

8   merchants.

9       8.      On or about December 5, 2019, IMS and POSaBIT entered into a

10  "Referral Agreement" wherein IMS agreed to refer merchants ("Referred

11  Merchants") to POSaBIT in exchange (generally speaking) for a portion of the

12

13  revenue derived from each Referred Merchant, which amount is referred to in the

14  Agreement as "residuals."  A copy of the Agreement is attached hereto as **Exhibit**

15  **A** and is incorporated herein by this reference.

16      9.      The intent was for POSaBIT to enter into agreements directly with

17  the merchants (a "Merchant Agreement").   IMS was not a party to those

18  agreements.

19

20      10.     The Agreement provides that IMS must maintain a "minimum

21  monthly volume" of 3 referrals resulting in "contract acceptance" (between the

22  referral and POSaBIT) for the Agreement to remain in effect.   IMS always

23  exceeded the required minimum.

24  COMPLAINT AND JURY DEMAND - 3

25



CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

11.     The Agreement makes clear that IMS is not an agent of POSaBIT (Paragraph 3 of the Agreement), although it refers to IMS as "Agent."

12.     The Agreement defines "Referred Merchant" as "a merchant generated pursuant to the referral efforts of Agent as permitted and authorized by this Agreement and approved by POSaBIT." (Agreement, Section 1, "Definitions".)

13.     The Agreement further provides that it shall continue for one year, with automatically renewing terms unless a party gives notice of termination "not less than sixty (30) [sic] days prior to the end of the then current-term. (Section 2.)

14.     The Agreement provides that IMS will be paid residuals for each Referred Merchant even after the Agreement is terminated (with exceptions not relevant here), so long as the Referred Merchant continues to use POSaBIT's Payment Processing Services. (Section 7.)

15.     Section 7.3 of the Agreement provides as follows:

Merchant Rate Adjustment.  In the event a merchant customer is likely to churn[1], POSaBIT reserves the right to adjust the pricing structure for merchant in order to make best effort to retain the account. The Agent's residual will be adjusted in proportion to the pricing adjustment.

_____

[1] To "churn" means to cease using POSaBIT's services.

COMPLAINT AND JURY DEMAND - 4

**CB** | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

POSaBIT has taken the position that this provision entitles it to allocate the entire amount of any Merchant Rate Adjustment to IMS.  IMS contends that any adjustment must be proportional, as measured by IMS's original percentage interest in POSABIT's gross revenue from the respective merchant.  For example, if IMS was receiving 10% of the gross revenue from a Merchant Customer, then POSaBIT could allocate IMS 10% of the amount of the Merchant Rate Adjustment.

16.    At the time the Agreement was entered, the effective residual rate for IMS was $.70 per transaction.

### LivWell Residuals

17.    In November of 2021, POSaBIT suddenly adjusted IMS's residuals for LivWell, an IMS Referred Merchant.  POSaBIT's initial explanation was that it was not making enough money on the account to meet the profit goals represented to shareholders, and therefore it needed to adjust IMS's portion.  At about the same time, POSaBIT sent an "Addendum to Referral Agreement" to IMS for IMS's signature, which would have  adjusted IMS's residuals on all of its Referred Merchants.  A copy of the Addendum is attached hereto as **Exhibit B** and is incorporated herein by this reference.

18.    IMS declined to sign the Addendum, and subsequently POSaBIT unilaterally adjusted IMS's residuals on the LivWell account (a fairly large

COMPLAINT AND JURY DEMAND - 5

**CB** | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

account).  The new effective residual rate was approximately $.41 per transaction. POSaBIT's justification was that it needed to adjust its pricing structure to satisfy LivWell by eliminating "network fees" and simplifying its pricing structure, which POSaBIT claimed would reduce its revenue from the account, and that therefore it could reduce IMS's residuals pursuant to Section 7.3 of the Agreement (the Merchant Rate Adjustment provision).  POSaBIT also unilaterally changed its method of calculating the residuals from a flat for each transaction to a "basis points" methodology, which made it difficult to compare the old rate with the new rate.

19.    Shortly thereafter and on multiple occasions, IMS objected and sought an explanation from POSaBIT for the amount of the adjustment (made more difficult by POSaBIT unilaterally changing the method of calculation), as it appeared to be disproportional to the downward adjustment POSaBIT allegedly provided to LivWell, in contravention of Section 7.3 of the Agreement.  (IMS later estimated that $.61 per transaction was likely an appropriate new effective rate.)  POSaBIT promised to be transparent with its calculations and to address the issue in a new agreement, but it never did so and has never provided documentary support or justification for the amount of the adjustment.

20.    POSaBIT typically provided a monthly Commission Report to IMS which broke out the residuals due IMS for that respective month on a store-by-

COMPLAINT AND JURY DEMAND - 6

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

store basis, but provided little other information.   However, the Commission Report POSaBIT provided to IMS on or about September 30, 2022, contained additional information, including POSaBIT's revenue from each store.   Based on this and other information in IMS's possession, it was able to confirm its suspicions that POSaBIT had disproportionately reduced IMS's residuals.   IMS confronted POSaBIT with this information but POSaBIT did not, and has not, changed its position that the disproportionate reduction in IMS's residuals was justified.

21.    LivWell is currently using POSaBIT's services and will continue to do so into the foreseeable future, during which time residuals will continue to accrue to IMS.

**Nature's Medicine Residuals**

22.    When reviewing the Commission Report for July of 2022, IMS noticed that certain Nature's Medicine (an IMS Referred Merchant) stores were not listed.   IMS asked POSaBIT about the omission, and POSaBIT informed IMS that Nature's Medicine had begun transitioning its stores to a different servicer.

23.    During the process of investigating the veracity of POSaBIT's assertions, IMS learned that in the fall of 2021 Nature's Medicine had purchased a cannabis retailer known as PurLife (and continued to do business under that name), and that Nature's Medicine had elected to expand its use of POSaBIT's

COMPLAINT AND JURY DEMAND - 7

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

services to the newly acquired stores. Notably, POSaBIT had not been paying residuals to IMS for those new stores.

24.    IMS brought the lack of residuals to the attention of Jon Baugher at POSaBIT, as failure to pay the residuals was a violation of the Agreement. Mr. Baugher acknowledged that POSaBIT had always paid IMS residuals for new stores of a Referred Merchant, and further stated that he would look into the situation and get back to IMS.

25.    Mr. Baugher was not forthcoming with information, so IMS spoke with another POSaBIT employee, Julie Solomon, regarding the matter. Ms. Solomon informed IMS that POSaBIT was drafting a letter responding to the issue.

26.    Approximately one week later, IMS contacted Ms. Solomon regarding the status of the letter. She stated that POSaBIT was still working on it, but that in any event POSaBIT was not going to pay IMS residuals for the new stores and was not going to renew its Agreement with IMS, although it would continue to pay IMS residuals owed to it.   At the end of the conversation IMS asked for a letter memorializing the conversation, which Ms. Solomon agreed to provide.

27.    As it turned out, the "letter" Ms. Solomon referenced was a Notice of Default and Termination, which POSaBIT emailed to IMS on September 7, 2022.

COMPLAINT AND JURY DEMAND - 8

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

The asserted basis for the termination was IMS's failure to meet the mandatory minimum referral requirement of the Agreement.  This was a pretext, as IMS had in fact continuously exceeded the requirement, and in any event POSaBIT never provided IMS with notice and an opportunity to cure any default as required by Section 12 of the Agreement.  A copy of the Notice of Breach and Termination is attached hereto as **Exhibit C** and is incorporated herein by this reference.

28.     Upon information and belief, Nature's Medicine has terminated its relationship with POSaBIT.

## V.  CLAIMS

### Breach of Contract

29.     IMS realleges the foregoing as if fully set forth herein.

30.     IMS has complied with its express and implied obligations under the Agreement.

31.     POSaBIT has failed to comply with its express and implied obligations under the Agreement, including the obligation of good faith and fair dealing.

32.     POSaBIT materially breached the Agreement.

33.     As a direct, consequential and proximate result of POSaBIT's breaches, IMS has suffered damages in an amount to be proven at trial, and in any

COMPLAINT AND JURY DEMAND - 9

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

event in excess of $400,000. As to the LivWell account those damages are continuing.

## Consumer Protection Act (RCW 19.86)

34.     IMS realleges the foregoing as if fully set forth herein.

35.     POSaBIT committed the foregoing and other unfair and deceptive acts and practices in trade or commerce in violation of Washington's Consumer Protection Act, thereby proximately causing damage to IMS.

36.     POSaBIT's  actions did, and are likely to, impact the public interest.

37.     POSaBIT's unfair and deceptive acts and practices within the conduct of trade or commerce proximately caused IMS damages in an amount to be proven at trial.  As to the LivWell account those damages are continuing.

## Declaratory Relief

38.     IMS realleges the foregoing as if fully set forth herein.

39.     An actual controversy has arisen and now exists between the parties relating to the interpretation of Section 7.3 of the Agreement.

40.     A declaratory judgment is necessary interpreting Section 7.3, in that the provision impacts the amount of future residuals due IMS.  POSaBIT contends the provision entitles it to allocate the entire amount of any Merchant Rate Adjustment to IMS, while IMS contends that any adjustment must be

COMPLAINT AND JURY DEMAND - 10



CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

1

2

proportional, as measured by IMS's original percentage interest in POSABIT's gross revenue from the respective merchant.

3

## VI.   PRAYER FOR RELIEF

4

5

WHEREFORE, IMS prays for relief against POSaBIT as follows:

6

7

1.   Money judgment in an amount to be proven at trial, together with prejudgment interest;

8

2.   An award of treble damages pursuant to RCW 19.86.090;

9

10

3.   An award of fees and costs pursuant to RCW 19.86.090, and any other applicable law or contract;

11

12

13

14

15

4.   For a declaration that pursuant to Section 7.3 of the Agreement, the amount of any Merchant Rate Adjustment allocated to IMS must be proportionate, as measured by IMS's original percentage interest in POSABIT's gross revenue from the respective merchant; and

16

17

5.   For such other and further relief as the Court deems just and proper.

/////

18

/////

19

/////

20

/////

21

/////

22

23

/////

24

COMPLAINT AND JURY DEMAND - 11

25

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
820 W. 7ᵗʰ Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## VII.  <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, IMS hereby

demands a trial by jury of not less than twelve (12) persons on all issues so triable.

DATED this 5th day of December, 2022.

CAMPBELL & BISSELL, PLLC

  /s/ Michael S. Bissell
MICHAEL S. BISSELL, WSBA #24077
Attorneys for Initiative Merchant Solutions, LLC
Campbell & Bissell, PLLC
820 W. 7th Avenue
Spokane, WA 99204
Telephone: (509) 455-7100
Facsimile: (509) 455-7111
Email: mbissell@campbell-bissell.com

COMPLAINT AND JURY DEMAND - 12

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100 (Phone)
509.455.7111 (Facsimile)

# Exhibit A

**This Referral Agreement (This Agreement) is** entered into as of this ___5th___ day of ___December_____, 20 _19___ (the "_Effective Date_") by and between **POSaBIT, Inc.** a Washington State Corporation (Company) and **[SALES AGENT LEGAL NAME]** ("_AGENT_"). POSaBIT and Agent are each a "_Party_" and, together, the "_Parties_". In consideration of the mutual promises, covenants and agreements contained in this Agreement, each of the Parties hereby agrees as follows:

**1. Definitions.**

"_Affiliate_" shall mean, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such person. For purposes of this definition, "control" (including, with its correlative meanings, the terms "controlling," "controlled by" and "under common control with"), as applied to any Person, shall include the possession, directly or indirectly, of the power to vote more than fifty percent (50%) of the securities having voting power for the election of directors of such person or otherwise to direct or cause the direction of the management and policies of that person, including by ownership or control of more than fifty percent (50%) of the capital or profits interest of such entity, whether through the ownership of voting securities, by contract or otherwise.

"_Confidential Information_" means all non-public, proprietary data or information of any party hereto which is valuable to the operation of such party's business and is treated by such party as confidential.

"_Customer_" means a Person/Company to whom a Payment Instrument is issued or who is otherwise authorized to use a Payment Instrument.

"_Merchant_" means a Person that accepts Payment Instruments from its Customers as payment for goods, services or otherwise.

"_Merchant Agreement_" means the application and agreement form used and approved by POSaBIT to establish an agreement with a Referred Merchant for Payment Processing Services.

"_Payment Brand_" means any of VISA USA, Inc., MasterCard, Inc., DFS Services, LLC (Discover), American Express, and all other applicable credit and debit card issuers or networks having proprietary rights to and clearing and oversight responsibilities with respect to any Payment Instrument used to effect payment-related transactions for which any Payment Processing Services are provided pursuant to this Agreement.

"_Payment Instrument_" is a payment card or account, or evidence of a payment card or account, authorized and established between a Customer and a Payment Brand and accepted by Merchants from such Customer as payment for goods or services. Payment Instruments include, but are not limited to, credit and debit cards, stored value cards, loyalty cards, electronic gift cards, authorized account or access numbers, paper certificates and credit accounts.

"_Payment Processing Services_" means (i) all services necessary to authorize, data capture, process, settle and reconcile transactions effected by Merchants with Customers using Payment Instruments; (ii) all services necessary to authorize, data capture and process (and when permitted by the applicable Payment Brand, settle and reconcile) transactions effected by Merchants with Customers using Payment Instruments;  and (iii) other related products and services, including point of sale terminal equipment and other electronic payments at the point of sale.

"_Person_" means any individual, corporation, general or limited partnership, limited liability company, limited liability partnership, joint venture, estate, trust, association, organization, governmental body or other entity or body.

Products: "'Products" initially shall mean those products listed in Exhibit C attached hereto and any such additional products that Company may produce or sell. Products may be changed, discontinued, or added to the Agent's portfolio by Company and by mutual agreement of the Parties.

"*Referred Merchant*" means a Merchant generated pursuant to the referral efforts of Agent as permitted and authorized by this Agreement and approved by POSaBIT.

"*Rules*" means the by-laws, regulations and requirements that are promulgated by any Payment Brand.

**2. Term.** The term of this Agreement shall commence on the Effective Date and, unless terminated earlier pursuant to this Agreement, shall terminate on the date that is one (1) year thereafter; *provided, however,* that this Agreement shall thereafter automatically renew for successive one-year terms unless either party delivers written notice of termination to the other party not less than sixty (30) days prior to the end of any then-current term. Upon termination of this Agreement, Agent shall (i) immediately discontinue its promotion and recommendation of POSaBIT Payment Processing Services and (ii) promptly return or destroy all materials, including without limitation, any Confidential Information, provided by POSaBIT to Agent, and Agent shall so certify to POSaBIT in writing. Upon termination, the terms and conditions set forth in this Agreement that, by their nature, would continue beyond such termination of this Agreement (including, by way of illustration only and not limitation, the provisions with respect to non-solicitation and confidentiality) shall remain in full force and effect following such termination.

**3. Relationship of the Parties.** The Parties expressly acknowledge and agree that this Agreement does not create a partnership, joint venture or agency relationship between them. Neither POSaBIT nor Agent shall have the authority to bind, commit or incur any liability on behalf of the other party or to otherwise act in any way as an agent or representative of the other Party and the Parties agree not to hold themselves out as such. Agent shall be solely responsible for any income, employment, sales, use, service, payroll, withholding, workers' compensation, unemployment compensation and other taxes that may be imposed with respect to Agent's performance of any duties or obligations, or any payments made by POSaBIT to Agent hereunder.

**3.1 Independent Contractors**. The relationship of Company and Agent established by this Agreement is that of independent contractor, and nothing contained in this Agreement shall be construed to (i) give either party the power to direct and control the day-today activities of the other, or (ii) constitute the parties as partners, joint venturers, co-owners or otherwise as participants in a joint undertaking, or (iii) allow Agent to create or assume any obligation on behalf of Company for any purpose whatsoever. All financial and other obligations associated with Agent's business are the sole responsibility of Agent and, Agent shall be responsible for, and shall indemnify and hold Company free and harmless from, any and all claims, damages or lawsuits (including Company's attorneys' fees) arising solely out of the acts of Agent, its employees or it's agents.

**4. Merchant Relationships.** POSaBIT shall have sole and exclusive authority to negotiate, with respect to each Referred Merchant, the establishment, modification, termination or extension of the terms and conditions of any Merchant Agreement. Agent acknowledges and agrees that it will in no way be responsible for, have any ownership interest in, or be a party to any Merchant Agreement. Any Merchant Agreement, and the rights and obligations thereunder, may be modified, terminated or assigned by POSaBIT and/or its sponsoring bank, in whole or in part, in their sole discretion. Agent agrees that POSaBIT reserves the right to accept or decline any Merchant based on POSaBIT sole and exclusive criteria and discretion, as well as to cease providing Payment Processing Services to any Referred Merchant at any time in accordance with terms of the applicable Merchant Agreement. Further, POSaBIT shall, in its sole discretion, determine all pricing charged to Referred Merchants for Payment Processing Services.

**5. Agent Obligations.** Agent may elect to refer Merchants to POSaBIT for the purpose of entering into Merchant Agreements in accordance with POSaBIT policies, procedures and instructions. With respect to any Referred Merchant, Agent shall submit to POSaBIT such information as is necessary or appropriate for POSaBIT to contact and solicit such Referred Merchant for Payment Processing Services, including such Referred Merchant's name, address, phone number, email address, and any other materials, documents or information that POSaBIT may

request. All such materials, documents and information must be submitted by Agent to POSaBIT in a complete, accurate and legible manner. Agent shall make no representations or warranties regarding POSaBIT or POSaBIT Payment Processing Services, other than as expressly authorized in writing. Agent shall perform its duties and obligations hereunder in compliance with all applicable Federal, state and local laws, rules and regulations and all applicable Rules.

**6.  POSaBIT Obligations.** POSaBITshall review each Merchant referred by Agent to determine, in POSaBIT sole discretion, whether such Merchant meets POSaBIT underwriting requirements and other applicable criteria. POSaBITshall comply with its obligations to pay Residuals as set forth in this Agreement.

**7. Residuals.** During the term of this Agreement and for such additional period as set forth in this Section, POSaBIT shall, with respect to each Referred Merchant, pay to Agent a monthly residual payment ("_Residuals_"). Agent's sole compensation under the terms of this Agreement shall be  calculated as a percentage of the Revenue derived from the Referred Merchant, as defined and detailed in Exhibit C hereof on the sales of all Products ordered, delivered or sold in the Territory by the Agent.


" _Revenue_" means, with respect to each Referred Merchant, total revenue collected and retained by POSaBIT (i.e., not paid to a third party or subsequently repaid or refunded) from or with respect to such Referred Merchant, less any costs incurred by POSaBIT related to such Referred Merchant, including, without limitation, any fines, dues or penalties assessed by any Payment Brand or bank, and any fees paid by POSaBIT to any bank, processor, merchant acquirer, vendor or other third party related to such Referred Merchant. Payment of any Residuals due hereunder shall be made by POSaBIT by Automated Clearing House (ACH) credit payable to Agent's designated account set forth on Schedule A attached hereto. Agent will supply POSaBIT with all information necessary for POSaBIT to remit payments to Agent and shall promptly notify POSaBITof any changes to such information. Residuals shall be due and payable by no later than the last day of the month immediately following the month during which such Residuals was earned. In conjunction with each monthly Residual payment, POSaBITshall provide to Agent a report setting forth the basis upon which the Residual payment has been calculated, indicating all Referred Merchants. Any calculation by POSaBITof the monthly Residuals amount due and owing to Agent that is not objected to by Agent within sixty (30) days of the applicable payment date shall be deemed final and binding on the Parties. POSaBIT may set off against any Residual payments otherwise owing to Agent for any sums that are due and owing to POSaBIT under this Agreement or any other sums otherwise owed by Agent to POSaBIT or any of its Affiliates. Upon termination of this Agreement, POSaBIT obligation hereunder to pay Residuals to Agent with respect to any Referred Merchant shall continue for so long as (_x_) such Referred Merchant continues to utilize POSaBIT Payment Processing Services pursuant to the applicable Merchant Agreement resulting from Agent's referral efforts, and (_y_) POSaBITcontinues to receive Net Revenue; _provided, however_, that all further Residual payments to Agent hereunder shall immediately cease in any instance where (i) this Agreement is terminated by POSaBIT pursuant to Section 10 hereof, or (ii) following termination of this Agreement, the monthly Residuals paid to Agent is less than $50 for three (3) consecutive months.

7.1 Residual Charge-Back. POSaBIT shall have the right, while this Agreement is in effect, to write off as bad debts such overdue customer accounts as it deems advisable after notifying Agent and providing Agent the opportunity to attempt to induce payment. In each such case, POSaBIT may charge back to Agent's account only any amounts previously paid to Agent. If such accounts are paid at any time, Agent shall be entitled to the applicable compensation.

7.2 Term and length of residual payments: Residual payments will ensue for the life of the Customer as defined in Exhibit C of this agreement. Residuals are subject to minimum performance requirements and volumes as defined in Exhibit C of this agreement.

7.3 Merchant Rate Adjustment: In the event a merchant customer is likely to churn, POSaBIT reserves the right to adjust the pricing structure for merchant in order to make best effort to retain the account. The Agent's residual will be adjusted in proportion to the pricing adjustment.

**8. Prices and Terms of Sale**: Company shall provide Agent with copies of its current price lists, its delivery and on-boarding schedules, and its standard terms and conditions of sale, as established from time to time. The pricing and terms of sale are currently defined in Exhibit C of this Agreement. Agent shall quote to customers only those authorized prices, delivery schedules, and terms and conditions, and shall have no authority to quote or offer any discount to such prices or change any such terms and conditions, without the consent of Company. Company may change the prices, delivery schedules, and terms and conditions, provided that it gives Representative at least fifteen (15) days prior written notice of any changes; however, such changes shall not affect any existing contacts or pricing agreements. Each order for a Product shall be governed by the prices, delivery schedules, and terms and conditions in effect at the time the order is accepted, and all quotations by Representative shall contain a statement to that effect.

8.2 Quotations. The parties shall furnish to each other copies of all quotations submitted to customers.

8.3 Orders. All orders for the Products shall be in writing, and the original shall be submitted to Company.

8.4 Acceptance. All orders obtained by Agent shall be subject to acceptance by Company at its principal office currently located at the address listed for Company at the beginning of this Agreement, and all quotations by Agent shall contain a statement to that effect. Agent shall have no authority to make any acceptance or delivery commitments to customers. Company specifically reserves the right to reject any order or any part thereof for any reasonable reason.

## 9. ADDITIONAL OBLIGATIONS OF COMPANY

9.1 Training by Company. Company shall provide sales training to Agent at periodic intervals, with the frequency and content of the training to be determined by Company.

9.2 Regulatory Approvals. Company shall be responsible for obtaining approvals necessary to distribute the Products.

9.3 Materials. Company shall provide Agent with marketing and technical information concerning the Products as well as reasonable quantities of brochures, instructional material, advertising literature, demonstration product samples, and other Product data at no charge.

9.4 Delivery Time. Company shall use its best efforts to fulfill delivery obligations as committed in acceptances.

9.5 New Developments. Company shall promptly inform Agent of new product developments relating to the Products.

**10. Non-Solicitation.** Commencing on the Effective Date and ending on the date that is three (3) years after the date that this Agreement is, for any reason, terminated (the "_Non-Solicitation Period_"), neither Agent nor any of its Affiliates shall, directly or indirectly, (a) solicit any Referred Merchant for purposes of any Person other than POSaBIT providing Payment Processing Services to any such Referred Merchant, or in any manner persuade or influence such Referred Merchant to cease any business relationship with POSaBIT or any of its Affiliates; or (b) solicit or attempt in any manner to persuade or influence any employee or agent of POSaBITor any of its Affiliates to work for, or provide services to, any Person other than POSaBIT.

**11.   Confidentiality.** Unless otherwise required by law, Agent shall, and shall cause its Affiliates to, hold in strict confidence at all times following the date hereof all Confidential Information of POSaBIT, and neither Agent nor any of its Affiliates shall use such Confidential Information for any purpose other than for the performance of Agent's duties and obligations hereunder. If Agent breaches, or threatens to breach, any of the provisions of this Section, in addition to any other rights POSaBIT may have, including a claim for damages, POSaBIT shall have the right to have the provisions of this Section specifically enforced, and Agent's breach or threatened breach enjoined, by any court of competent jurisdiction, without presentment of a bond (such requirement being expressly waived by Agent), it being agreed that any breach or threatened breach of this Section would cause irreparable harm to POSaBITin that money damages would not provide an adequate remedy.

**12. Events of Default; Remedies.** Any of the following shall constitute an "*Event of Default*" under this Agreement: (i) any Party's failure or refusal to perform any material covenant or obligation of such Party under this Agreement; *provided, however*, no such default shall be a basis for termination of this Agreement unless the non-defaulting Party shall have given the defaulting Party notice of such default, and such default shall not be remedied within thirty (30) days of receipt of such notice; (ii) if by order of a court of competent jurisdiction, a receiver, liquidator, trustee or other similar official shall be appointed for any party or any of its properties; or if by decree of such a court, such shall be adjudicated bankrupt or insolvent or any substantial part of the property of such shall have been sequestered; or if a petition to declare bankruptcy or to reorganize such party pursuant to any bankruptcy, liquidation or other insolvency law applicable to such party shall be filed against such party and shall not be dismissed within sixty (60) days after such filing; or if such party shall file a voluntary petition in bankruptcy under any provision of any bankruptcy law or similar law or shall consent to the filing of any bankruptcy or reorganization petition against it under any bankruptcy law or similar law. Upon the occurrence of any Event of Default, the non-defaulting Party shall have the right to, by written notice given to the defaulting Party, immediately terminate this Agreement, and/or pursue any other remedy available under this Agreement or applicable law.

**13. Indemnification.** Each of the Parties (each, an "*Indemnifying Party*") agrees to defend, indemnify and hold harmless the other Party and such other Party's officers, partners, employees, agents and consultants harmless for all liabilities, losses, claims, damages, costs, and expenses (including reasonable attorneys' fees) whenever arising or incurred that are caused or are alleged to have been caused, directly or indirectly, by or as a result of the Indemnifying Party's performance, failure to perform or breach of this Agreement.

**14. Successors and Assigns.** This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, each of the Parties and their respective representatives, heirs, successors and assigns; *provided, however*, that Agent shall not assign any of its rights or obligations hereunder, including but not limited to the right to receive any compensation hereunder, without the prior written consent of POSaBIT, Inc. which consent may be withheld in POSaBIT's sole and absolute discretion. Any attempted assignment by Agent without POSaBIT prior written consent shall be null and void, and shall constitute a material breach of this Agreement.

**15.   Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and may not be changed, modified or amended, except by an instrument in writing signed by the Party against whom any such change, modification or amendment is asserted.

**16.   Notices.** Any notice, demand, request or written communication which may be required to be given by either Party to or upon the other under this Agreement shall be given by hand delivery, certified mail, return receipt requested, or nationally reputable overnight courier service, in any case addressed as follows:

*If to POSaBIT, Inc.*
Attn: Jon Baugher
1128 8th Street
Kirkland, WA 98033

*If to Agent:*   Initiative Merchant Solutions
Attn:   Chris Altieri
  9626 53rd street
  Riveside, CA 92509

or such other address as either party may provide in writing to the other party. Notices shall be effective on the date hand delivered, three (3) days after the date deposited with the U.S. Postal Service for certified mail, or one (1) day after the date deposited with a nationally reputable overnight courier, as the case may be.

**15.   Governing Law; Venue and Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Washington (irrespective of its choice of law principles). The Parties hereby agree that any suit to enforce any provision of this Agreement or arising out of or based upon this Agreement or the business relationship between the Parties hereto shall be brought in federal or state court in Seattle, Washington.  Each Party hereby agrees that such courts shall have exclusive personal jurisdiction and venue with respect to such Party, and each Party hereby submits to the exclusive personal jurisdiction and venue of such courts.

**16.   Construction and Interpretation.** This Agreement has been negotiated by the Parties, and legal or equitable principles that might require the construction of this Agreement, or any provision of this Agreement, against the Party drafting this Agreement will not apply in any construction or interpretation of this Agreement.

**17.   Headings.** The section headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18.   Severability.** If any provision of this Agreement shall be declared by any court of competent jurisdiction to be illegal, void or unenforceable, all other provisions of this Agreement shall not be affected and shall remain in full force and effect.

**19. Counterparts.** This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement. The signatures to this Agreement may be evidenced by facsimile or PDF copies reflecting one or more Parties' signatures hereto, and any such facsimile or PDF copy shall be sufficient to evidence the signature of such Party or Parties as if it were an original signature.

The Parties have caused this Agreement to be executed on the day and year first above written.

**POSaBIT, Inc.**

By:_____
Name: Jon Baugher
Title: CRO

**Initiative Merchant Solutions**

By: *Chris Altieri*            12/5/2019
Name: Christopher Altieri
Title:    Owner

**SCHEDULE A**
**ACH Authorization**


Agent hereby authorizes POSaBIT to present ACH debits and credits to the following checking account in the amount of fees and other payments due to and from Agent under the Agreement.

**Transfer Funds To/From:**

Name of Bank: JPMorgan Chase Bank

ABA Transit/Routing #: 322271627

Checking Account #: 585802611

This authorization is to remain in full force and effect until POSaBIT has received written notification of its termination, in such time and in such manner as to afford POSaBIT a reasonable opportunity to act on it and all obligations due to and from Agent under the Agreement have been paid in full.  If the bank account is closed, Agent will notify POSaBIT and this authorization, in any event, will apply to the new account.


**Agent:**

Reseller: Initiative Merchant Solutions
Signature: *Chris Altieri*
Name: Chris Altieri
Title: Owner
Date: 12/5/2019
Federal Tax ID #: 84-3751740

POSaBIT

**Exhibit C – Pricing and Compensation**

**Debit Processing Rates & Partner Rev share**

| Merchant Processing Fee | Swipe Fee (Merchant pays) | Consumer Convenience Fee | Rev Share to Partner |
|---|---|---|---|
| $1.00 | $0.00 | $3.50 | $0.80 |
| $1.00 | $0.15 | $3.50 | $0.90 |
| $1.00 | $0.30 | $3.50 | $1 |

**Equipment rental fee is $35 per month per terminal**

Minimum monthly volume: A minimum of 3 referrals resulting in contract acceptance must be maintained in order for this agreement to remain in effect.

Products:
- PBPay (crypto based payment system)
- DigiTM (Enhanced POB payment system)

# Exhibit B

POSaBIT

Addendum to Referral Agreement
Dated December 5, 2019


THIS ADDENDUM is made as of November 1, 2021, (the "Addendum Effective Date"), by and between POSaBIT, Inc. ("Company") located at 11915 124th Ave NE, Kirkland WA, 98033, and Initiative Merchant Solutions, LLC ("Agent") located at 9626 53rd Street, Riverside, California 92509 (each a "Party", collectively the "Parties"). All capitalized terms in this Addendum will, unless otherwise indicated herein, have the meanings assigned to them in the Referral Agreement.

1. The Parties hereby agree that the following will be added to Exhibit C ("Pricing and Compensation") of the Referral Agreement:

   a) Company will pay a revenue share rate of 50BPS per transaction for all transactions processed by any existing or now IMS/POSaBIT referred dispensaries.

2. All other terms and conditions of the Referral Agreement remain in full force and effect.

The Parties have executed this Addendum as of the Addendum Effective Date:

POSaBIT, Inc.                                    INITIATIVE MERCHANT SOLUTIONS, LLC

By: _____               By: _____

Name: __Ryan Hamlin_____               Name: _____

Title: ___CEO_____               Title: _____

Dated: __November 1, 2021_____              Dated: _____

# Exhibit C



September 7, 2022

Initiative Merchant Solutions, LLC
Attn: Christopher Altieri
9626 53rd Street
Riverside, California 92509

*VIA OVERNIGHT COURIER*          Re:  <u>Notice of Breach and Termination</u>
*With copy by email*

Mr. Altieri:

As you are aware Initiative Merchant Solutions, LLC ("IMS") and POSaBIT, Inc. ("POSaBIT") are parties to that certain Referral Agent Agreement dated December 5, 2019 (the "Agreement").

Exhibit C [Pricing and Compensation] to the Agreement requires that IMS refer a minimum of 3 Merchants per month to POSaBIT resulting in contract acceptance in order for the Agreement to remain in effect.

IMS has consistently failed to meet the foregoing referral minimum, and as a result POSaBIT is terminating the Agreement.
Pursuant to Sections 12 and 16 of the Agreement, you are hereby notified of the termination of the Agreement.  Since IMS' prior and ongoing breach of Exhibit C cannot be remedied, the Agreement is hereby terminated as of the date of this letter notice.  POSaBIT will continue to pay any Residuals owed to IMS under Section 7 of the Agreement.

Nothing contained in or omitted from this notice shall waive or limit any right, remedy or cause of action we may have.

If you have any questions about this notice please contact me directly at mattf@posabit.com.

Sincerely,

*Matthew A. Fowler*

Matt Fowler
Chief Financial Officer
POSaBIT, Inc.